**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **E.M.G.,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 25-1256 (PAD)** |
| **SUNSET SURGERY AND WOUND CARE LLC; ET AL.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge

E.M.G. complains of: (1) discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131, et seq. ("ADA"); (2) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (3) conspiracy to deprive him of civil rights protected by the ADA contrary to 42 U.S.C. § 1985(3); and (4) defamation in connection with Puerto Rico law (Docket No. 11).   Before the court is defendants' "Joint Motion to Dismiss and Memorandum in Support Thereof" (Docket No. 27), which plaintiff opposed (Docket No. 28). For the reasons explained below, the motion must be granted with respect to 42 U.S.C. § 1985(3), but otherwise denied.

**I.    BACKGROUND**

On May 7, 2025, E.M.G., attorney José C. Vélez-Colón and the Vélez Law Group initiated the action against Sunset Surgery and Wound Care LLC ("Wound Care"), Javier Márquez-Graciani, and the Municipality of Mayagüez (Docket No. 1).  On June 4, 2025, the court ordered E.M.G. to show cause as to why the Municipality should not be dropped and severed from the

E.M.G. v. Sunset Surgery and Wound Care, LLC; et al.
Civil No. 25-1256 (PAD)
Memorandum and Order
Page 2

case without prejudice and Vélez-Colón and the Vélez Law Group not disqualified as record counsel in the case against Wound Care and Márquez-Graciani (Docket No. 4).  On June 17, 2025, E.M.G., Vélez-Colón and the Vélez Law Group filed an Amended Complaint against Wound Care, Márquez-Graciani JMG Surgical Services P.S.C. ("Surgical Services"), and Marian Báez-Rodríguez (Docket No. 5).[1]  On July 2, 2025, the court ordered Vélez-Colón and the Vélez Law Group to inform whether they would withdraw their claims against Wound Care, Surgical Services, Márquez-Graciani, and Báez-Rodríguez without prejudice; and if so, file an amended complaint on E.M.G.'s behalf deleting those claims (Docket No. 10).

On July 7, 2025, E.M.G. filed the now operative complaint against Wound Care, Surgical Services, Márquez-Graciani and Báez Rodríguez (Docket No. 11).  On August 20, 2025, E.M.G. returned and filed executed summonses (Docket Nos. 16-19).  On September 10, 2025, defendants asked the court for an extension of time –until October 10, 2025– to answer the operative complaint or otherwise plead, which the court granted (Docket Nos, 22, 24 and 26).  On October 10, 2025, they filed a joint motion to dismiss predicated on Fed. R. Civ. P. 12(b)(6) (Docket No. 27).  On October 23, 2025, E.M.G. opposed the motion (Docket No. 28).

## II.    DISCUSSION

### A.  ADA.

#### 1.  Discrimination.

E.M.G. alleges that defendants discriminated against him in violation of the ADA (Docket No. 11).  To this end, he asserts two distinct discrimination claims: the first, "failure to remove architectural barriers, and communication barriers that are structural in nature . . . where such

---

[1] As well., E.M.G. responded to the Order to Show Cause (Docket No. 6).

removal is readily achievable," is brought on the authority of Section 12182(b)(2)(A)(iv) (Docket No. 11, pp. 18-38); and the second, "failure to make reasonable modifications in policies, practices, or procedures" to accommodate "individuals with disabilities," is grounded on Section 12182(b)(2)(A)(ii). Id., pp. 38-46.

      a.  Architectural Barriers.

Defendants argue that the operative complaint does not provide "the slightest detail" as to any architectural barriers that E.M.G. encountered in the offices of "Surgi Wound" or how those barriers affected his access to the facilities because of his particular disability (Docket No. 27, pp. 10-13). The operative complaint, however, alleges, among other things, that E.M.B. is a quadriplegic man who requires a wheelchair; that he visited Surgi Wound on April 23, 2025, and found the service counter where he "conducted his transaction" to be exceedingly high –i.e., approximately 42 inches above the floor, in violation of the ADA Accessibility Guidelines that call for a maximum height of 36 inches– which forced him "to maintain an abnormal and physically taxing posture" throughout the duration of the transaction," that caused "muscle spasms and nerve pain" as well as "emotional distress, humiliation, and discomfort, undermining his sense of independence and self-worth" (Docket No. 11, ¶¶ 14, 58, 90-92). Contrary to defendants' view, E.M.G. has sufficiently identified at least one architectural barrier and linked it to his disability.

Defendants contend that other barriers the allegations refer to, which were allegedly identified by E.M.G.'s attorney following E.M.G.'s visit to the facilities upon an after-the-fact review of images taken by his client of those premises on that day, fail to demonstrate an injury in fact connected to E.M.G.'s disability (Docket No. 27, pp. 13-15). The court is not persuaded. See, Betancourt Colón v. Puerto Rico Convention Center District Auth.; et al., Civ. No. 22-1288, Docket No. 65, pp. 15-17 (denying similar argument, raised on objection to Magistrate Judge's Report and

Recommendation, that a plaintiff may only sue for barriers actually or personally encountered)(collecting cases). Besides, the motion to dismiss does not point the court to the specific pleadings that defendants find insufficient. And it is well settled that it is not the court's task "to do counsel's work, create the ossature for the argument, and put flesh on its bones," U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990),

      b.   Reasonable Accommodation.

Defendants point out, without any elaboration, that E.M.G. has not sufficiently pled that the defendants have "a discriminatory policy or practice in effect;" that he requested "a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods;" that the requested modification or one like it "was necessary to afford that access;" and that the defendants "nonetheless refused to modify the policy or practice" (Docket No. 27, p. 15). Yet, the operative complaint states that: (1) defendants have a policy or practice that forces "all customers, including those with mobility disabilities, to conduct transactions at counters designed for standing customers" that discriminates against individuals who use wheelchairs; (2) E.M.G. made a "clear and explicit verbal request for a reasonable accommodation, specifically asking the staff member to come out from behind the counter to assist him at a level where meaningful communication could occur;" (3) his "initial request was ignored" and he "repeated his request for accommodation, making it unequivocally clear that he needed assistance due to his disability;" and (4) despite those "multiple verbal requests," defendants' staff refused to come out from behind the counter or to otherwise modify their service procedures to accommodate E.M.G.'s disability (Docket No. 11, ¶¶ 125-127, 138). That is sufficient. By extension, defendants' argument does not justify dismissal.

### 2. Retaliation.

E.M.G. claims that he engaged in protected activity by seeking medical treatment at Surgi Wound, identifying accessibility barriers, and opting to address those barriers "through proper legal channels" by instructing his attorney to "send a formal notification offering collaborative resolution," and that in retaliation for those actions, defendants: (1) published videos on social media "characterizing his legitimate medical visit and accessibility concerns as a 'scheme;'" (2) breached his doctor-patient confidentiality by "publicly disclosing his identity as their patient;" (3) made false statements claiming he was "engaged in fraud;" (4) encouraged the "widespread dissemination of these false statements to media and government officials;" and (5) created a "hostile environment designed to punish him for asserting his civil rights" (Docket No. 11, ¶¶ 151-152). Defendants counter that the retaliation claim must be dismissed because those arguably retaliatory acts were actually "directed not at [plaintiff] himself, but at his attorney" (Docket No. 27, p. 17). The argument presents factual and evidentiary issues best suited for disposition by way of Fed. R. Civ. P. 56 or at trial, after the conclusion and with the benefit of discovery, and not at the pleadings stage. As such, the request to dismiss the retaliation claim must be denied.

### B. Section 504 of the Rehabilitation Act.

E.M.G. maintains, among other things, that: (1) "Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits any program or activity receiving federal financial assistance from excluding qualified individuals with disabilities from participating in or benefiting from their services and requires reasonable modifications to ensure meaningful access;" (2) Surgical Services is a medical facility, which "[u]pon information and belief," receives "federal financial assistance through Medicare and Medicaid reimbursements for medical services provided to beneficiaries of these federal programs;" (3) as such, it is subject to the "non-discrimination" and "reasonable

E.M.G. v. Sunset Surgery and Wound Care, LLC; et al.
Civil No. 25-1256 (PAD)
Memorandum and Order
Page 6

accommodation" requirements of Section 504; and (4) because defendants refused to "modify their service procedures to accommodate" plaintiff, defendants denied him "full and equal access to their services," in violation of those requirements (Docket No. 11, ¶¶ 118, 120, 142, 193-195). Defendants posit that E.M.G.'s allegation that Surgical Services receives federal financial assistance is based on information and belief; is devoid of further supporting facts; and is too conclusory to support a finding that they are subject to Section 504 (Docket No. 27, pp. 18-20). Courts have ruled otherwise.

For example, in Montanez v. Price, 154 F.4th 127 (3rd Cir. 2025), *cert. denied sub nom.* Pennsylvania v. Montanez, 2026 WL 1718015 (U.S. June 15, 2026), the Court, liberally construing the pleadings, found plaintiff's allegations that the defendant received federal funding for purposes of a Section 504 claim, which were grounded upon plaintiff's information and belief, sufficient to survive a Rule 12(b)(6) motion. Id. at 145-146 (adding that "at the motion-to-dismiss stage . . . we must accept the allegations as true," and that "unless and until discovery establishes otherwise, [defendant] remains a proper defendant on the Section 504 claim"). Likewise, in Iyer v. George Washington Univ. Sch. of Med. & Health Scis., 2025 WL 2192985 (D.D.C. Aug. 1, 2025), the Court found that the plaintiff plausibly stated that a defendant was subject to Section 504 by alleging that it received "federal financial assistance, as defined by 29 U.S.C. § 749 . . . ." Id. at *5 n. 1; see also; Cohn v. KeySpan Corp., 713 F.Supp.2d 143, 159 (E.D.N.Y. 2010)(allegation, made upon information and belief, that defendants are recipients of federal funding does not justify dismissal of plaintiff's Rehabilitation Act claim for failure to state a claim). Thus, defendants' request to dismiss the Section 504 claim must be denied.

E.M.G. v. Sunset Surgery and Wound Care, LLC; et al.
Civil No. 25-1256 (PAD)
Memorandum and Order
Page 7

## C.  42 U.S.C. § 1985(3).

E.M.G. alleges that defendants conspired to violate his rights and those of a "protected class of individuals with disabilities" under the ADA, in violation of Section 1985(3) (Docket No. 11, pp. 47-52).  Section 1985 permits suits against those who conspire to deprive others "of the equal protection of the laws, or of the equal privileges and immunities under the law."  42 U.S.C. § 1985(3).  The elements of a Section 1985 claim are: (1) "a conspiracy;" (2) "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws;" (3) "an overt act in furtherance of the conspiracy;" and (4) either (a) an "injury to person or property;" or (b) "a deprivation of a constitutionally protected right."  Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012).  Further, the plaintiff must allege facts showing "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Id. (quotations and citation omitted).

Relying on Isaacs v. Trs. of Dartmouth Coll., 2017 WL 2982954 (D.N.H. July 12, 2017), aff'd, 2019 WL 10837707 (1st Cir. Jan. 3, 2019), defendants highlight that Section 1985(3) claims based on ADA violations "are categorically foreclosed in the First Circuit" (Docket No. 27, p. 21).  In Isaacs, 2017 WL 2982954, the District Court of New Hampshire observed that "the court of appeals for this circuit has held that [Section] 1985 does not provide a remedy for ADA violations."  Id. at *7 (citing D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012)(observing that Section 1985 does not create substantive rights, but rather provides "remedies for violations of rights created by other sources of law"); see also, Sauter v. State of Nev., 1998 WL 196630, *1 (9th Cir. 1998)(conspiracy to violate ADA rights not cognizable under Section 1985 because ADA has its their own remedial structure).  E.M.G. responds that if the alleged conspiracy covers conduct that ADA remedies but also extends to conduct that the ADA does not remedy –i.e.,

defamation and breach of federal and local medical confidentiality laws– then the entirety of the conspiracy can fall within the purview of Section 1985(3) (Docket No. 28, pp. 21-23).  But he offers no on-point legal authorities in support of that proposition.

Still, the putative class that E.M.G. identifies is that of "individuals with disabilities," as to which he alleges defendants harbored a "discriminatory animus" (Docket No. 11, ¶¶ 166-168, 169, 172, 175).  And several courts have dismissed comparable claims in similar contexts.  See, Isaacs, 2017 WL 2982954, **7-8 (dismissing Section 1985(3) claims alleging that defendants conspired to discriminate against plaintiff based on his "position in a class of disabled individuals" by violating his common law, contract, and due process rights by publishing confidential documents); D'Amato v. Wisc. Gas Co., 760 F.2d 1474, 1485-1487 (7th Cir. 1985)(noting that a conspiracy based upon animus toward the disabled as a class is not actionable under Section 1985(3)); Wilhelm v. Cont'l Title Co., 720 F.2d 1173, 1177 (10th Cir. 1983)("We must conclude that class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now [Section] 1985(3)").  E.M.G. has not persuaded the court that the Section 1985(3) claim here deserves a different end.  With this in mind, his Section 1985(3) claim must be dismissed.

### D. Defamation.

Defendants argue that the court lacks jurisdiction over the defamation claim because it: (1) arises under Puerto Rico law and is "not sufficiently related to the federal claims to warrant supplemental jurisdiction;" and (2) in their view, it only "affects the attorney, not the [p]laintiff" and thus is not part of the same case or controversy as the federal claims (Docket No. 27, p. 22). Defendants do not develop those arguments in any meaningful way.  So, they can be safely rejected.  Zannino, 895 F.2d at 17 (underdeveloped arguments are waived).  In any event, the

E.M.G. v. Sunset Surgery and Wound Care, LLC; et al.
Civil No. 25-1256 (PAD)
Memorandum and Order
Page 9

operative complaint demonstrates that E.M.G.'s defamation claim is tied to his visit to Surgi Wound on April 23, 2025, after which occasion defendants, among other things, allegedly made public expressions describing his visit as a "scheme;" falsely claimed that he was "engaged in fraud;" and portrayed him as trying to "squeeze" them for money, thereby causing him emotional harm (Docket No. 11, ¶¶ 181-184). In that sense, it is easy to see that his defamation claim shares the same operative facts as his federal claims. And contrary to defendants' view, the defamatory expressions alleged the operative pleadings were directed at E.M.G. –not his attorney. Id. In consequence, defendants' request to dismiss the defamation claim must be denied.

### III.    CONCLUSION

For the reasons stated, defendants' "Joint Motion to Dismiss and Memorandum in Support Thereof" (Docket No. 27) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims under 42 U.S.C. § 1985(3) (Docket No. 11, pp. 47-52) must be and are hereby DISMISSED.

A Case Management Order will follow.

**SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of July, 2026.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge